453 P.2d 235

**Albert RIEXINGER, Appellant,**

v.

**The ASHTON COMPANY, Inc., Appellee.**

**No. 2 CA–CIV 578.**

Court of Appeals of Arizona.

April 17, 1969.

Rehearing Denied May 21, 1969.

Review Denied June 17, 1969.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for appellant.

Mesch, Marquez & Rothschild, by Douglas H. Clark, Jr., Tucson, for appellee.

HATHAWAY, Judge.

Albert Riexinger was injured while riding as a passenger in a motor vehicle driven by a co-employee, Leonard D. Owen. Riexinger and Owen, both employed by the State of Arizona Highway Department, were traveling along a detour being constructed by the Ashton Company, Inc., when the vehicle struck a depression in the road. The jolt caused Riexinger to hit the roof of the vehicle and he was injured.

Riexinger brought suit against Ashton Company and Owen, alleging that Ashton Company had negligently maintained the detour and had failed to warn of its dangerous condition, and further alleging that Owen negligently operated the vehicle. Before trial Owen paid $5,000 in consideration of a Covenant Not to Execute.

The case proceeded to trial against both defendants and the jury returned a verdict against the Ashton Company in the sum of $20,000, *finding it to be the sole tort-feasor*, and judgment was entered thereon. The Ashton Company filed a motion to credit the judgment with the $5,000 paid by the co-defendant, Owen. The court granted the motion over the plaintiff's opposition, and ordered that the judgment be credited in that amount. This appeal is from that order.

Arizona follows the common law rule that there is no contribution among joint tort-feasors and no right of indemnification.* Essex Wire Corp. of California v. Salt River Project Agricultural Improvement and Power District, 9 Ariz.App. 295, 451 P.2d 653 (1969). A joint tort-

---

* This rule is based upon the principle that it is against public policy for courts to determine the degree of culpability between wrongdoers. The law leaves them where it finds them. Fidelity & Cas. Co. of New York v. Chapman, 167 Or. 661, 120 P.2d 223, 225 (1941).

feasor, however, is entitled to have the amount of settlement with another joint tort-feasor applied in reduction of the plaintiff's damages, Egurrola v. Szychowski, 95 Ariz. 194, 388 P.2d 242 (1964); Fagerberg v. Phoenix Flour Mills Co., 50 Ariz. 227, 71 P.2d 1022 (1937). Since Owen was exonerated as a tort-feasor by the jury, however, the appellant contends that the $5,000 paid by him for the Covenant Not to Execute is from a collateral source and, therefore, does not operate to reduce the amount of the judgment. We find the definition of the Collateral Source Rule in the Restatement of Torts § 920(e), helpful:

> "e. *Benefits received from third persons.* The rule stated in this Section does not apply where, although a benefit is received because of the harm, such benefit is the result of the *forethought of the plaintiff or of a gift to him by a third person.* The plaintiff is not barred from recovery merely because he suffers no net loss from the injury, as where he is insured or where friends make contributions to him because of the loss. If his things are tortiously destroyed, the insurance carrier is subrogated to his position. In other cases the damages which he is entitled to recover are not diminished by the fact that, either as a *matter of a contract right or because of gifts, the transaction results in no loss to him.* Where a person has been disabled and hence cannot work but derives an income during the period of disability from a contract of insurance or from a contract of employment which requires payment during such period, his income is not the result of earnings but of *previous contractual* arrangements made for his own benefit, not the tortfeasor's. Likewise, the damages for loss of earnings are not diminished by the fact that his employer or a third person makes *gifts* to him even though these have been given because of his incapacity. Further, he may be able to recover for the reasonable value of medical treatment or other services made necessary by the injury although these have been donated to him." (Emphasis added)

█ As can be seen from the above definition, the Collateral Source Rule applies where some *gratuitous or pre-planned benefit* comes to the plaintiff from a source which has no connection with the defendant. Here, the benefit was not gratuitous; the settlement was extracted by means of a lawsuit and Owen paid the sum to eliminate the possibility of greater liability. The kinds of pre-planned benefits which come under the Rule are insurance, sick pay, fraternal order benefits, governmental welfare, and the like. See Udall, Arizona Law of Evidence § 120.

While there is authority to the contrary, most other jurisdictions which have considered the precise question have held that, even though the settling defendant is later exonerated, the plaintiff is entitled to only one recovery, necessitating a credit against the judgment. Ramsey v. Camp, 254 N.C. 443, 119 S.E.2d 209, 94 A.L.R.2d 348 (1961); Steger v. Egyud, 219 Md. 331, 149 A.2d 762 (1959); Jukes v. North American Van Lines, 181 Kan. 12, 309 P.2d 692 (1957); Klotz v. Lee, 36 N.J.Super. 6, 114 A.2d 746 (1955); Jacobsen v. Woerner, 149 Kan. 598, 89 P.2d 24 (1939); Holland v. Southern Public Utilities Co., 208 N.C. 289, 180 S.E. 592 (1935). See also, Green v. Lang Co., 115 Utah 528, 206 P.2d 626 (1949).

█ Appellant seeks to distinguish these cases on the ground that they involve Covenants Not to Sue, which eliminate a determination of the settling defendant's liability, whereas the Covenant Not to Execute does not. In either case the claim for relief is not extinguished, Fagerberg v. Phoenix Flour Mills Co., supra. Moreover, the source of funds, whether obtained under a Covenant Not to Sue or a Covenant Not to Execute, is from a potential defendant or a defendant. The funds in either case are exacted by means of a lawsuit, threatened or filed, and are given to determine and finalize the settling party's responsibility. We deem the appellation

given the covenant unimportant. In Levi v. Montgomery, 120 N.W.2d 383 (N.D. 1963), we find the following pertinent language:

"The test in such case is: Was the defendant sued as a tort-feasor? If so, any liability of the remaining defendants to the plaintiff must be reduced by the amount paid for such release or covenant not to sue by such defendant. *The question of actual liability in tort of any of the defendants so discharged by release and covenant not to sue is wholely immaterial.* The release and covenant not to sue discharges such defendant from any possible liability for any tort of which such defendant possibly might have been guilty. *Whether he was, in fact, guilty of tort is immaterial where such defendant does not desire to try out the question and is willing to pay consideration and in good faith secures such release and covenant not to sue.*

"Surely the plaintiff cannot now complain if the amount of his verdict recovered against the defendant Montgomery is reduced by the amount paid to him by the defendant implement company on such covenant not to sue. The plaintiff still will receive the full amount which the jury found he was entitled to receive for all of his injuries. * * * In this case, the verdict of the jury found the plaintiff's full damages to be in the sum of $30,000. However, he has already been paid $15,000 for those injuries by the defendant Grand Forks Implement Company under the covenant not to sue. Surely the plaintiff cannot now argue that the defendant implement company made a gift to him and that, on receipt of such gift and release from the suit of the defendant implement company, the re-maining defendant should be liable for the full amount of plaintiff's damages as determined by the jury without any right of contribution from the other defendant. To so hold would allow the plaintiff to recover in full for all damages suffered by him and to retain the sum of $15,000 paid for the covenant not to sue, which sum would be in addition to and beyond any damages which he, in fact, had suffered." (Emphasis added)

120 N.W. 389

■ The law strives to make the injured party whole insofar as possible. Once that has been achieved the law has served its purpose. No punitive damages were awarded and there was no call to punish or penalize the defendant. To sanction excessive recoveries is to make courts instrumentalities of oppression.

Were we to accept the appellant's position, plaintiffs in lawsuits could well be placed in the anomalous position of winning by losing in trials to settled-out defendants. Such mock issues as might be developed in a case could impose unduly on the court and bring distortion into the judicial process. To hold the law to be as urged by appellant could encourage maneuvers calculated to secure more than a party is entitled to receive.

Affirmed.

DONOFRIO, J., and JOHN A. McGUIRE, Superior Court Judge, concur.

NOTE: Judges JOHN F. MOLLOY and HERBERT F. KRUCKER having requested that they be relieved from consideration of this matter, Judges FRANCIS J. DONOFRIO and JOHN A. McGUIRE were called to sit in their stead and participate in the determination of this decision.