579 P.2d 577

**Boston C. HALL, Appellant,**

v.

**Manuel OLAGUE, Appellee.**

**No. 2 CA–CIV 2645.**

Court of Appeals of Arizona,
Division 2.

March 9, 1978.

Rehearing Denied April 12, 1978.

Review Denied May 2, 1978.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman, Carter Morey and John L. Tully, Tucson, for appellant.

Slutes, Browning, Zlaket & Sakrison, P. C. by Thomas A. Zlaket and A. John Pelander, Tucson, for appellee.

## OPINION

HOWARD, Judge.

Appellant, a sergeant in the United States Air Force, suffered personal injuries as a result of an automobile accident which precluded him from performing his military duties for almost a year. During the time of this inability to work, he was still paid his regular pay allowances to which he was entitled under 37 U.S.C., § 201, et seq. There are no specific provisions in the foregoing statutes dealing with the right of a member of the armed forces to his pay if he is disabled and unable to perform his duties. A member of the armed forces is entitled to his pay no matter how disabled and there are no sick benefits or disability pay for members of the armed forces on active duty.

Although the jury awarded appellant $35,000, he was precluded from presenting to the jury, as an element of damages, his loss of earning capacity, measured by the amount he was paid during the time of his inability to work, to-wit, $11,367.46. He appeals claiming that the trial court erred by failing to apply the "collateral source rule".

The so-called "collateral source rule" states that total or partial compensation for an injury which the injured party receives from a collateral source wholly independent of the wrongdoer does not operate to reduce the damages recoverable from the wrongdoer. More specifically, Restatement of Torts, § 920(e) states in part:

". . . Where a person has been disabled and hence cannot work but derives an income during the period of disability from a contract of insurance or from a contract of employment which requires payment during such period, his income is not the result of earnings but of previous contractual arrangements made for his own benefit, not the tortfeasor's . . ."

Appellee claims that there are no Arizona cases in which the collateral source rule has been declared to be the law in Arizona. We do not agree. The rule was applied, although not by name, in *City of Tucson v. Holliday*, 3 Ariz.App. 10, 411 P.2d 183 (1966). The holdings in *Hing v. Youtsey*, 10 Ariz.App. 540, 460 P.2d 646 (1969) and *City of Phoenix v. Whiting*, 10 Ariz.App. 189, 457 P.2d 729 (1969), wherein the courts stated that in a wrongful death action by the surviving spouse evidence of remarriage is not admissible, are in reality an application of the collateral source rule. See *Dubil v. LaBate*, 52 N.J. 255, 245 A.2d 177 (1968) and *Gulf, C. & S. F. Ry. Co. v. Younger*, 90 Tex. 387, 38 S.W. 1121 (1897). Reference to the collateral source rule was made in the cases of *American Home Assurance Company v. Vaughn*, 21 Ariz.App. 190, 517 P.2d 1083 (1974) and *Riexinger v. Ashton Company, Inc.*, 9 Ariz.App. 406, 453 P.2d 235 (1969). In the recent case of *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744 (1977), the court in its discussion of the constitutionality of the Medical Malpractice Act, A.R.S. § 12–561, et seq. (1976), impliedly recognized the existence of the collateral source rule in Arizona law. See also, *Allen v. Fisher*, 118 Ariz. 95, 574 P.2d 1314 (App.1977).

The application of this rule to various situations has given rise to a substantial amount of litigation as the rule is an attempt to resolve a basic conflict between two guiding principles of tort law, namely, (1) the limitation of compensation to the injured party to the amount necessary to make him whole and (2) the avoidance of a windfall to the tortfeasor if a choice must be made between him and the injured party.[1]

As specifically applied to wages, the rule followed in most jurisdictions is that the amount of recovery from a third person (defendant) who is responsible for a personal injury is not to be mitigated or reduced by the plaintiff's receipt from his employer of wages, salary, or commissions during the period of the plaintiff's disability regardless of whether such payments are made pursuant to a contractual obligation or as mere gratuities. See cases in Annot., 7 A.L.R.3d 516 (1966).

In Missouri and Pennsylvania the courts appear to attach importance to whether the payment of salary and wages by an employer to an employee while the latter is suffering from an injury is gratuitous or in discharge of a legal obligation. The rule in those states entitles an employee to recover compensation for loss of time from the third person who caused the injury only if the payment of wages or salary is gratuitous and not in response to a legal obligation or for services rendered during such period. *Kite v. Jones*, 389 Pa. 339, 132 A.2d 683 (1957); *Moon v. St. Louis Transit Co.*, 247 Mo. 227, 152 S.W. 303 (1912); *Quigley v. Pennsylvania R. Co.*, 210 Pa. 162, 59 A. 958 (1904); *Williams v. St. Louis & S. F. Ry. Co.*, 123 Mo. 573, 27 S.W. 387 (1894).

The courts of New York and Colorado draw a different distinction, admitting evidence of continuing salary payments unless made from accumulated sick leave. *Kistler v. Halsey*, 173 Colo. 540, 481 P.2d 722 (1971); *D'Amico v. Resnik*, 22 Misc.2d 545, 197 N.Y. S.2d 826 (1960); *Drinkwater v. Dinsmore*, 80 N.Y. 390 (1880).

The Louisiana and Alabama courts take the position that payment of compensation

---

1. In recent years commentators have generally opposed the rule. H. Sanders, The Texas Collateral Source Rule, A Critical Survey, 54 Tex. L.Rev. 791 (1976); 2 Harper & James, The Law of Torts (1968 Supp.) § 25.22, at p. 152; see, e. g., Fleming, The Collateral Source Rule and Loss Allocation in Tort Law, 54 Cal.L.Rev. 1478 (1966); Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harv.L. Rev. 741 (1964); West, The Collateral Source Rule Sans Subrogation: A Plaintiff's Windfall, 16 Okl.L.Rev. 395 (1963), Schwartz, The Collateral Source Rule, 41 B.U.L.Rev. 348 (1961); James, Social Insurance and Tort Liability: The Problem of Alternative Remedies, 27 N.Y.U.L. Rev. 537 (1952).

by an employer to his injured employee bars recovery for loss of time in an action by the the employee against a third person who is responsible for the injury. See cases in Annot., 7 A.L.R.3d 516 (1966). However, it should be noted that Alabama has made the distinction between the continued payment of salary and a gratuity and held in *Bachelder v. Morgan*, 179 Ala. 339, 60 So. 815 (1912), that money paid to an employee by an employer not as salary but as a matter of grace and kindness could not be used by the defendant to minimize the amount of the plaintiff's damages.

In 1970, the California Supreme Court had occasion to re-examine the collateral source rule in the case of *Helfend v. Southern California Rapid Transit District*, 2 Cal.3d 1, 84 Cal.Rptr. 173, 465 P.2d 61 (1970). The court reaffirmed its adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source—such as insurance, pension, continued wages or disability payments—for which he actually or constructively paid or in cases in which the collateral source would be recompensed from the tort recovery by means of subrogation, refund of benefits or some other arrangement.[2] The *Helfend* court noted the criticism levied against the collateral source rule by law review and text writers, but stated:

". . . The reforms which many academicians propose cannot easily be achieved through piecemeal common law development; the proposed changes, if desirable, would be more effectively accomplished through legislative reform. In any case, we cannot believe that the judicial repeal of the collateral source rule, as applied in the present case, would be the place to begin the needed changes." 465 P.2d at 69.

■ It is especially necessary, in view of *Allstate Insurance Company v. Druke*, n.2, supra, that review be accomplished through legislative action in this state as one of the changes proposed by the academicians is

that subrogation and refund of benefits be used to prevent a double recovery.

In cases involving members of the armed forces, the courts of Alaska and New Hampshire have specifically held the collateral source rule applicable in a factual situation such as we have here. *Beaulieu v. Elliott*, 434 P.2d 665 (Alaska 1967); *Bell v. Primeau*, 104 N.H. 227, 183 A.2d 729 (1962). In *Beaulieu* the court stated:

". . . By entering the military service, Elliott in effect agreed to perform certain duties and functions in exchange for certain benefits to be given him by the government. One of those benefits was that he was to receive military pay and allowances during periods of physical incapacity from performing his duties. This was in the nature of a contractual arrangement between Elliott and the government when he became a member of the armed forces, and which he may have paid for by accepting wages lower than those he might have obtained from the performance of like duties in civilian life. The income that Elliott received from the government is not the result of earnings, but of such previous contractual arrangement. Such a contractual arrangement was made for Elliott's own benefit, and not for the benefit of a tort feasor, such as Beaulieu. . . ." 434 P.2d at 673–74.

■ In essence, the Alaska court recognized that the serviceman had constructively paid for the benefits. A member of the armed forces receives and accepts a lower salary than may be expected from the equivalent civilian occupation in exchange for security and benefits not available to most employees in civilian life. The serviceman receives, in addition to his regular pay and allowances, a pension to which he makes no contributions, free medical care for himself and his dependents, recreational facilities which are provided free or at minimal cost and PX and commissary privileges. Free or low cost quarters are provided, when available, to unmarried enlisted per-

---

**2.** In Arizona recompensation from the tort recovery by means of subrogation or refund of benefits is not permissible. *Allstate Insurance*

*Company v. Druke,* 118 Ariz. 301, 576 P.2d 489 (1978).

sonnel and officers, and on-post housing is provided at low cost to married members of the armed forces when available. The person who enters the armed forces knows that if he is disabled in combat, or otherwise, he will receive his whole pay and allowances. All of this is in exchange for the lower pay.

We adhere to the majority rule and hold that the court erred in refusing to allow appellant to present evidence of his lost earning capacity.

Appellant made an offer of proof below at which time appellee stipulated that the sum of $11,367.46 for pay and allowances was paid to appellant during the period of his disability. Rather than sending the case back for a determination of the amount of lost earning capacity, it is therefore appropriate for us to modify the judgment.

The judgment is modified by increasing appellant's recovery by the sum of $11,-367.46.

RICHMOND, C. J., and HATHAWAY, J., concur.