595 P.2d 1006

Leo Anthony MICHAEL and Jane Doe Michael, his wife, Appellants,

v.

Nikki Rae COLE, a single woman, Appellee.

No. 1 CA–CIV 3841.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 24, 1978.

Rehearing Denied Oct. 2, 1978.

Review Granted Oct. 17, 1978.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph Hunsaker, P. Michael Whipple, Phoenix, for appellants.

Wolfe & Harris, P. A. by Sidney B. Wolfe, Phoenix, for appellee.

OPINION

SCHROEDER, Judge.

In this personal injury action, appellants appeal from a judgment based upon a jury verdict awarding appellee $8,750.00 in compensatory damages and $5,000.00 in puni-

tive damages. Appellants urge reversal on two grounds: first that the appellee improperly injected appellants' insurance coverage into the litigation, and, second, that the jury was improperly instructed with respect to punitive damages. We find no error and affirm.

The accident from which the litigation arose occurred when a car driven by defendant-appellant, Leo Anthony Michael, rear ended a car driven by plaintiff-appellee, Nikki Rae Cole, on a smooth, straight road. Michael had been drinking several hours before the accident and a breathalyzer test conducted by police showed a .21 blood alcohol reading, well above the .10 level considered presumptive of intoxication. Testimony also revealed that after the accident Michael appeared disheveled and was unable to remember anything about the incident.

The trial court directed a verdict for the appellee on the issues of negligence and liability, and the court's action was not contested by appellants. Thus the only questions which went to the jury related to damages.

The subject of insurance arose twice during the course of the trial. Appellants contend that each episode constituted reversible error.

The first incident occurred on the third day of trial as the jury was filing out of the courtroom for the noon recess. Appellant Michael's wife handed appellants' counsel an envelope, and appellee's counsel approached appellants' counsel and asked in a conversational tone, "[i]s that the policy, Ralph?". The remark was made within a few feet of some members of the jury. However, the record does not show that any jurors heard the remark, or that they understood it to be in reference to a liability insurance policy covering appellants for this accident. Appellants, nevertheless, argue that the lower court should have presumed the remark to have been prejudicial and granted appellants' request for a mistrial.

The second, and more serious mention of insurance came during the cross-examination of appellant Michael. On direct examination, he had testified extensively concerning his financial difficulties, including his limited income, obligations for child support and remarriage. After a lengthy discussion in chambers with counsel for both parties, the trial court ordered that the appellee could, on cross-examination, elicit from Michael the fact that he had insurance to cover a claim for punitive damages. The court, however, refused to permit questioning concerning coverage for compensatory damages. During the actual cross-examination, Michael exhibited some recalcitrance and declined to admit that he had a policy covering punitive damages. He eventually admitted, however, that he did have insurance.[1]

1. The relevant testimony is as follows:

"CROSS EXAMINATION BY MR. WOLFE:

Q. Mr. Michaels, you have previously been sworn and testified in this cause?
A. Yes.
Q. And at the time of your testimony, you testified that you were earning a thousand dollars a month and that you had to pay $300 a month for child support?
A. Right.
Q. And that your take-home pay was about $600?
A. That's correct.
Q. You also testified that you are now remarried?
A. That's correct.
Q. Now, Mr. Michaels, as a matter of fact, if there is a judgment entered against you for punitive damages, you will not have to pay that judgment; isn't that correct?
A. That I will not have to pay it?
Q. That's right.
A. I don't know that.
Q. As a matter of fact, you have insurance that covers any award for punitive damages against you; do you not?
A. At this time I don't know that.
Q. All right. But you do have that insurance?
A. I don't know if it covers punitive or not. I don't know that.
Q. Do you feel that you might have to personally pay the judgment?
A. I don't know that.
Q. Okay. Have you discussed it with anyone?

Appellants claim error in that the trial court should not have permitted any cross-examination with respect to insurance. They further argue that, even if the fact of coverage for punitive damages could have been elicited, the examination improperly brought out coverage for compensatory damages.

In contending that the judgment must be reversed because of the mention of insurance coverage, appellants principally rely on traditional Arizona cases typified by *Consolidated Motors, Inc. v. Ketcham*, 49 Ariz. 295, 66 P.2d 246 (1937). *See generally, Dunipace v. Martin*, 73 Ariz. 415, 242 P.2d 543 (1952); *Northern Arizona Supply Co. v. Stinson*, 73 Ariz. 109, 238 P.2d 937 (1951). The Court in *Ketcham* held that when any evidence is presented to the jury in a negligence action showing that the defendant is covered by liability insurance, a mistrial should be declared. *Ketcham*, however, no longer represents the law in Arizona.

In *Muehlebach v. Mercer Mortuary and Chapel, Inc.*, 93 Ariz. 60, 378 P.2d 741 (1963), our Supreme Court rejected the traditional rule that any evidence, implication or suggestion of liability insurance in a negligence action constitutes error. The Court recognized that in more sophisticated times, it can no longer be assumed that the jury will ignore issues of liability and "merely decide how much the insurance company should pay." *Id.* at 62, 378 P.2d at 742. Since *Muehlebach*, the Arizona rule is that the mere mention of insurance in a negligence action will not constitute grounds for a mistrial; the issue is whether the reference to insurance would "prejudice the fair trial of any party." *Davis v. Marquardt*, 20 Ariz.App. 372, 374, 513 P.2d 379, 381 (1973). *See also Swick v. White*, 18 Ariz.App. 519, 520, 504 P.2d 50, 52 (1972). In this determination, the trial court has considerable discretion. *Muehlebach*, 93 Ariz. at 65, 378 P.2d at 744.

█ Applying these principles to the insurance incidents challenged by appellants,

A. No, I have not.

Q. But you do have insurance; do you not?

A. I have insurance, yes.

we must hold that the appellants have not shown any prejudice. The first episode, which consisted solely of a brief reference to a "policy" during a recess, and which may not actually have been heard by the jurors at all, must be considered de minimis.

The second episode involved the very conscious elicitation of evidence concerning insurance on cross-examination of Michael. However, we cannot agree with appellants that the trial court in the context of this case erred in permitting the plaintiff to cross-examine the defendant concerning the existence of a policy covering punitive damages. It is not disputed that he had a policy and that it did cover punitive damages. *See Price v. Hartford Accident and Indemnity Co.*, 108 Ariz. 485, 502 P.2d 522 (1972), holding that punitive damages are covered by a liability insurance policy absent an express exclusion. Punitive damages were obviously a major issue in this trial. The question of insurance coverage was permitted to be raised only after Michael himself, on cross-examination, had painted a gloomy picture of his financial problems in an effort to evoke a sympathetic response from the jury and to avoid a heavy punitive verdict. Had the existence of the coverage not been brought out, the jury might well have been left with the wholly false impression that its verdict would have to be paid by the appellants personally.

Appellants rely upon *Odoms v. Traveler's Insurance Co.*, 339 So.2d 196 (Fla.1976), in which the Court held that the trial court erred in allowing the plaintiff to show the actual policy limits of defendant's insurance policy in connection with a claim for punitive damages. We find that case distinguishable in that its focus is upon excluding the actual policy limits.

█ In Arizona, the defendants' financial condition is relevant to a claim of punitive damages, and the jury is allowed to consider the wealth or financial status of the wrongdoer. *Southern Pacific Transpor-*

MR. HUNSAKER: May it please the Court, I think it's beyond counsel's prerogative in chambers.

MR. WOLFE: I have no further questions."

*tation Co. v. Lueck,* 111 Ariz. 560, 570, 535 P.2d 599, 609 (1975), *cert. denied,* 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763 (1976); *Kelman v. Bohi,* 27 Ariz.App. 24, 550 P.2d 671 (1976). It is also well recognized that the existence of liability insurance may be admissible when it is relevant and competent to prove some fact in issue. Udall, Arizona Law of Evidence § 122, at 265–66 (1960), *see generally* McCormick, Handbook of the Law of Evidence § 201, at 480 (Cleary ed. 1972). Moreover, Rule 411 of the recently enacted Arizona Rules of Evidence provides that evidence of liability insurance is admissible when such evidence is offered for a purpose other than showing that the person acted negligently or otherwise wrongfully. Thus, while the existence of insurance in this case was not relevant to the question of negligence or fault, it was relevant to the issue of financial circumstances. *See Ayers v. Christiansen,* 222 Kan. 225, 564 P.2d 458 (1977). The defendant himself injected the issue of his financial circumstances into the case. It cannot conceivably be maintained that the actual verdict here was excessive. We, therefore, conclude that the trial court's ruling in this case was not erroneous and caused no prejudice.

We also reject appellants' argument that, even though the trial court's limited ruling with respect to punitive damages may have been proper, the actual testimony which indicated the existence of insurance coverage for compensatory damages was seriously prejudicial. We assume, for purpose of this argument, that the jury's knowledge of compensatory, as opposed to punitive damage coverage, could have had some significance in this case. Nevertheless, the fact was not elicited as the result of appellants' counsel's deliberate efforts to defy the court's limited ruling with respect to punitive damage coverage. The testimony was the result of appellant Michael's own failure to answer appellee's counsel's questions directly, even though appellants' counsel was well aware that the questions would be asked under the court's ruling. "[U]nder the circumstances defense counsel should and could have controlled his own

witness well enough," *Muehlebach,* 93 Ariz. at 66, 378 P.2d at 744–45, so as to avoid any problems created by the reference to general insurance.

Appellants' other claim of error is based upon allegedly insufficient jury instructions regarding punitive damages. Appellants do not question the propriety of the instructions describing the type of conduct necessary to justify awarding punitive damages, nor do they challenge the factors which the jury was instructed to take into consideration. Rather, appellants contend that the trial court erroneously failed to instruct the jury that the alleged warranted misconduct justifying punitive damages must have proximately caused the injuries. Appellants rely upon *Smith v. Chapman,* 115 Ariz. 211, 564 P.2d 900 (1977). In that case, the liability issue went to the jury without an instruction on proximate cause. The Court held that the jury should have been instructed that, in order to find liability, it had to determine that the defendant's intoxication and negligent driving caused the accident. In this case, however, the question of liability, and hence of proximate cause, was properly taken away from the jury. The only questions for the jury to decide were those on which it was instructed, i. e., the culpability of Michael's conduct and the extent of damages to be awarded.

The judgment is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.